[No. 3812.   Decided January 6, 1902.]

*In the Matter of the Estate of* ERIK K. ALFSTAD, *Deceased.*

| 27 | 175 |
| 29 | 540 |

| 27 | 175 |
| e30 | 7 |
| e31 | 40 |

DISMISSAL OF APPEAL — FAILURE TO DESIGNATE PARTIES.

Bal. Code, § 6501, which provides that the party appealing shall be known as the appellant and the adverse party as the respondent, and they shall be so designated in all papers in the cause after the notice of appeal shall have been given or served, is not mandatory in the sense that a failure to comply literally with such provisions would be ground for dismissal of the appeal.

SAME — FAILURE TO PRINT FINDINGS IN BRIEF.

Where an appeal is taken from a judgment based upon a finding by the court that the final account presented by an administratrix was correct and just, except as to two minor items, the fail-

ure of appellants to print in their brief the court's findings as to separate items of the account which it allowed and approved would not be ground for dismissal.

EXECUTORS AND ADMINISTRATORS — FINAL ACCOUNTING — ALLOWANCE OF CLAIMS — PRESUMPTIONS.

The action of the lower court in overruling objections to claims against a decedent's estate, made on the ground that they were not properly verified and proved, or that they were not presented within the time limited by law, must be presumed as correct in the absence of evidence in the record tending to support the objections.

SAME — COURT SITTING IN PROBATE — JURISDICTION.

Although the superior court has original jurisdiction, under the state constitution, of all matters of probate, of all cases in equity and of all cases in law not specially excepted, such courts have no power in probate proceedings to pass upon questions of partnership between the decedent and other parties.

SAME — ALLOWANCE FOR IMPROVEMENTS UPON REALTY.

Although an administratrix may have had no right to make improvements upon an estate in her charge, without the authority of the court therefor, yet where such improvements were made with the consent of all parties interested in the distribution of the estate, and were made in good faith for the betterment of the property, the action of the court in allowing the administratrix's claim for such improvements would not be error.

SAME — LIABILITY OF ADMINISTRATRIX FOR USE AND OCCUPATION OF PREMISES.

Where the sister of a decedent, upon her appointment as administratrix, took possession of his real and personal property and conducted the business formerly carried on by her brother in her own name, she is chargeable upon final accounting with the value of the use and occupation of such premises.

WITNESSES — COMPETENCY — TRANSACTIONS WITH DECEDENT.

The testimony of a sister of deceased establishing a partnership between them is incompetent and inadmissible under Bal. Code, § 5991, which prohibits a party in interest or to the record from testifying in his own behalf as to any transaction had with the deceased.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*John D. Dill* and *John C. Kleber,* for appellants.

*Wirt W. Saunders,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This is an appeal from an order of the superior court of Spokane county settling and approving the final account and report of Emma Lagerquist as administratrix of the estate of Erik K. Alfstad, deceased, distributing said estate, and discharging said administratrix.

The administratrix moves to dismiss the appeal for the alleged reasons: *First.* That appellants have not complied with § 6501 of Ballinger's Code, which provides that the party appealing shall be known as the appellant, and the adverse party as the respondent, and they shall be so designated in all papers in the cause after the notice of appeal shall have been given or served, but the title of the cause shall in other respects remain unchanged. *Second.* That appellants have not complied with paragraph 5 of rule 8 of this court, which provides that in all equity causes and actions at law tried by the court without a jury, the party or parties appealing shall print in their brief the findings of fact, with the exceptions thereto, on which any question is sought to be raised by them on appeal. *Third.* That the appellants have not complied with rule 12, providing that no alleged error or mistake of the superior court will be considered unless the same be clearly pointed out in the appellants' brief. The appellants are named in the brief of their counsel, but it is true, as stated by counsel for the respondent, that Emma Lagerquist, as administratrix, is not designated in the record or in the brief of appellants as the respondent herein; but a failure to so designate a party to a proceeding, and especially to a proceeding such as the one at bar, would

hardly warrant the dismissal of an appeal. The statute provides a convenient and uniform designation of the parties to causes in the supreme court, but such provision is not mandatory in the sense that a failure to comply with it literally is fatal to the appeal. Such failure does not affect the substance of the appeal or the right of appeal, and constitutes no ground for dismissal under the statute. Bal. Code, §§ 6517, 6518. No question is made as to the validity of the notice of appeal or the service thereof, and that notice clearly shows what parties are appealing, and also the adverse party. And, besides, this cause is entitled as similar proceedings usually are in probate matters in the superior court as well as in this court. Upon the hearing of the application for the settlement and allowance of the account presented by the administratrix and the objections thereto .interposed by the appellants, the court made certain findings of fact, which are not printed in appellants' brief. Some of these findings, however, relate to matters which are undisputed, and therefore do not fall within the rule invoked by the respondent. The court found generally that the account as presented by the administratrix was correct and just, except as to two items, aggregating $15, and accordingly approved the same. It also made some findings or conclusions as to certain claims included in the account. But the fact that appellants have not printed in their brief the findings as to the separate items of the account which were allowed and approved by the court, over the objection of appellants, affords no sufficient reason for the dismissal of the appeal. With regard to the third ground upon which the motion to dismiss is based it is sufficient to observe that the errors relied on by appellants for reversal of the order appealed from are pointed out in their brief substantially in accordance with

the statute and the rules of this court. The motion to dismiss is denied.

The facts of this case, briefly stated, are these: One Erik K. Alfstad died intestate in Spokane county, Washington, in February, 1895, leaving an estate in said county, consisting of both real and personal property. The real estate consisted of lot 12, in block 14, in the town of Hilliard, with the improvements thereon. At the time of his death the decedent was conducting a saloon and lodging house in the building on said lot, and the title to the property stood in his name. The heirs at law of said decedent are appellants, G. K. Alfstad, O. K. Alfstad, brothers of deceased, and Marit K. Alfstad, a niece of deceased, and Mary O. Rude and Emma Alfstad, now Emma Lagerquist, sisters of deceased. In February, 1895, the said Emma Alfstad applied for and obtained letters of administration upon her deceased brother's estate. On June 10, 1896, said Emma Alfstad was removed as administratrix of said estate because of her marriage to Victor Lagerquist, and a citation was issued to her requiring her to make final settlement and accounting of her trust in said estate, or show cause for not so doing. The record fails to show that any accounting was made pursuant to the citation. In fact, it is entirely silent upon that subject. On March 7, 1900, the said Emma Lagerquist was again appointed administratrix of said estate. Upon her first appointment as administratrix respondent took possession of all the property of the decedent, and remained in possession and control thereof up to the time of filing her final account and report, on June 27, 1900. The real estate was sold shortly before the presentation of the final account, by order of the court, for $2,000, which was paid to the administratrix. Prior to that time the ad-

ministratrix (respondent here) conducted the said saloon and lodging house in her own name, and apparently for her own benefit, and did not account to the court or to the parties interested in the estate for the proceeds or profits of the business or for the use and occupation of the premises. When the respondent made application for her appointment as administratrix, she stated in her verified petition that all of said estate belonged ·to her deceased brother, and it seems to have been inventoried as his sole property. But in her final account the respondent, as administratrix, included a claim to one-half of the whole estate as the surviving partner of her brother, deceased, which she asked the court to approve and allow, and which request the court granted. It further appears from her account as filed, that the respondent, without any order of the court, expended over $1,600 in making improvements upon, and in erecting an addition to the building upon, the said lot; and this claim was allowed as a proper charge against the estate. It is not practicable or necessary to set out in detail all of the various items of debits and credits contained in the respondent's final account and report of her doings. It is sufficient to state, in this connection, that every item of expenditure set out in the account, except two, amounting to the sum of $15, was approved by the court. There is no showing in the record that the decedent left any debts· to be paid. But he did leave money and chattels of the value of at least $517, and real estate of the value of $700; and yet it was found by the court, on final settlement, that the residue of the estate in the hands of the administratrix and subject to distribution was the sum of $74.18 only. This depleted condition of the estate resulted largely from the failure of the court to require the respondent to account for the

value of the use and occupation of the real estate during the time it was in her exclusive possession, and which will hereinafter be more fully considered.   Of the amount in the hands of respondent ($74.18) one-half was adjudged to belong to respondent as surviving partner of the decedent, and the other half was distributed to the heirs of the decedent, including the respondent, in equal shares.   At the time appointed for hearing and settling respondent's final account the appellants appeared by their attorneys, and objected to and contested most of the items thereof. Many of the items of expenditure charged in the account were objected to on the ground that the claims alleged to have been paid were not properly verified or approved, or were not presented to the administratrix within the time limited by law, and were therefore barred by the statute of limitations.   But, inasmuch as there is no evidence in the record as to the time when these particular claims were presented for allowance, or as to whether they were properly verified and approved, we must presume that the decision of the court in overruling the objections thereto was correct.

One of the most serious questions presented for our determination is whether the court below, when sitting as a court of probate, had the authority or power, upon the hearing and settlement of the final account rendered by the administratrix, to consider and determine the alleged claim of the administratrix to one-half of the estate as a partner of the deceased.   That the court had jurisdiction to determine the question of the alleged partnership is denied by the appellants, and they further insist that, even if the court had jurisdiction to hear and determine that question, the evidence adduced to establish the relation of partners between the respondent and the decedent

was wholly incompetent and inadmissible for that purpose. On the other hand, it is earnestly contended by the learned counsel for the respondent that the superior court had the right to pass upon the question of partnership by reason of the fact that such courts are vested with general equity as well as probate jurisdiction. Although the superior courts of this state have, under our constitution, original jurisdiction "of all matters of probate," as well as of all cases in equity and of all cases at law not specially excepted (Const., art. 4, § 6), yet it does not necessarily follow that such courts have the power *in probate proceedings* to consider and determine equitable questions which may not be classed as "matters of probate." The powers of the superior court in respect to its probate jurisdiction are the same as they would be if it were in fact a separate probate court. Proceedings in probate matters, in actions in equity, and at common law are distinct, and should not be intermingled, except in cases specially authorized by law. Regarding the jurisdiction of probate courts, Judge Works, in his valuable treatise on the Jurisdiction of Courts (at pages 432, 433), says:

"And where probate jurisdiction is vested in courts of general jurisdiction, it is usually held that proceedings in probate must be treated as distinct from its law and equity jurisdiction, and as if it were a separate and distinct court of probate."

This doctrine was expressly announced by the supreme court of Nevada in the well considered case of *Lucich v. Medin*, 3 Nev. 93 (93 Am. Dec. 376), in the following language:

"Although the district court has jurisdiction in common law, chancery, and probate cases, yet the proceedings in each are separate and distinct, at least a proceeding in a probate case must in its very nature be distinct from an

action at law or a suit in chancery. Under our practice an equitable defense may be set up to an action at law, and in this way the common law and chancery practice become to some extent blended in the same case. In other respects the proceedings in chancery, at common law, and in probate courts are distinct; and the proceedings in one class of cases should not be mixed up with those of another."

Tested by the rule enunciated by the authorities above cited, and which appears to be eminently reasonable, the question is, did the lower court have the power, upon the hearing of this final account, to determine the claims of the respondent to a portion of the estate as a surviving partner of the decedent? We think this question must be answered negatively. It is made the duty by statute, in this state, of the superior court, when acting as a court of probate, to settle the accounts of executors and administrators, and upon such settlement, or at any subsequent time upon the application of the executor or administrator, or any heir, devisee, or legatee, to distribute the residue of the estate among the persons who are by law entitled thereto. Bal. Code, § 6355. But this section of the statute only authorizes a distribution of the estate to the heirs, devisees, or legatees, or persons succeeding to their rights, and does not contemplate a distribution of property in the possession of an executor or administrator to persons who may claim it, not under or through, but adversely to the estate. Concerning a provision of the Code of California relating to the distribution of estates of deceased persons, and which is equally as comprehensive as § 6355 of our Code, the supreme court of that state said:

"The law does not contemplate or provide for the distribution of property or money in the hands of the executor or administrator to persons who may claim adversely to the estate, but leaves all such questions to be determined

by action on behalf of or against the executor. The estate as distributed must go to the heirs or legatees or devisees, or to some of them, or those holding under them, and the decree, when made, is conclusive as to their rights, subject only to be set aside, modified, or reversed on appeal." *In re Rowland,* 74 Cal. 523 (16 Pac. 315, 5 Am. St. Rep. 464).

In that case a surviving husband claimed certain property in the hands of the executors of the will of his deceased wife as community property to which he was alone entitled, and the court held that he could not have his claim of ownership determined upon a proceeding for the distribution of his deceased wife's estate. It was also held in that case that a legatee under a will, who claims property in the possession of the executor in his own right, and adversely to the estate, is not concluded by a decree of distribution of such property from afterwards asserting his adverse claim against the distributee. See, also, *In re Cook,* 77 Cal. 220 (17 Pac. 923, 1 L. R. A. 567, 11 Am. St. Rep. 267), where it was ruled that a petition by an administrator for a final distribution of the estate of the decedent could not properly contain a prayer for an accounting against a distributee for property of the deceased which came into his possession in a foreign state, even if it were assumed that the court might have jurisdiction over property left by the deceased in such state.

In *Stewart v. Lohr,* 1 Wash. 341 (25 Pac. 457, 22 Am. St. Rep. 150), a husband claimed as his separate property certain real estate which was included in the inventory of the estate of his deceased wife. The probate court (then a separate and distinct tribunal) proceeded to try and determine the title to the property in controversy, and from its decision an appeal was taken to the district court for Skagit county, and was tried by its successor,

the superior court of that county. The cause was finally appealed to this court, and we held, upon a motion to dismiss the appeal, that the probate court had no power to determine the title to real estate as between the representative of the estate and the husband of the deceased, who claimed an interest adverse to the estate. As to the question of the jurisdiction of the probate court, this court observed:

"That the probate court is without jurisdiction to try the title to property as between the representatives of an estate and strangers thereto, is too well settled by the authorities to require argument. . . . In the case at bar, the person claiming adversely to the estate was the husband of the deceased party, and it appears that this fact was thought to affect the question. We, however, do not think so. For while it is true that the probate court has jurisdiction to determine the claims to property as between those interested in the estate, this authority only goes to the extent of determining their relative interests as derived from the estate, and not to an interest claimed adversely thereto. In the case before us the husband, though interested in the estate of his deceased wife, was, so far as the claim he was attempting to assert, an entire stranger thereto."

So it may be said in this case that the respondent, though interested in the estate of her deceased brother, is, so far as the claim she is attempting to assert is concerned, an entire stranger thereto.

In *Huston v. Becker,* 15 Wash. 586 (47 Pac. 10), it was held that the superior court, when exercising probate jurisdiction, has no power to direct a distribution of a decedent's estate to the heirs charged with a lien in favor of the administrator on account of money expended by him for the benefit of the estate. And in *Miller's Estate,* 136 Pa. St. 349 (20 Atl. 565), it was held that the Orphan's

Court had no jurisdiction to determine the existence of a partnership between a deceased person and another, or to take cognizance of partnership transactions and to state an account between the surviving partner and the representative of the decedent. See, also, as to the powers of probate courts or courts acting as such, *In re Hass,* 97 Cal. 232 (31 Pac. 893) ; *In re Kimberly,* 97 Cal. 281 (32 Pac. 234) ; *Hewitt's Appeal,* 53 Conn. 24 (1 Atl. 815) ; *Hickman v. Stewart,* 69 Tex. 255 (5 S. W. 833) ; *Cox v. Cox,* 77 Tex. 587 (14 S. W. 201).

In this state it is the duty of the executor or administrator of a deceased person who was a member of a co-partnership to include in the inventory of such person's estate, in a separate schedule, the whole of the property of such partnership; and after the property has been inventoried it becomes the duty of the appraisers to estimate the value thereof, and also the value of the deceased's individual interest therein, after the payment or satisfaction of all the debts and liabilities of the partnership. And after such inventory is taken the partnership property is in the custody and control of the executor or administrator for the purposes of administration, unless the surviving partner shall, within five days from the filing of the inventory, or such further time as the court may allow, apply for the administration thereof and give the required bond. If the surviving partner apply therefor, he is entitled to the administration of the partnership estate if he have the qualifications required for a general administrator. He is denominated an administrator of the partnership, and his powers and duties extend to the settlement of the partnership affairs and business generally, and the payment or transfer of the interest of the deceased in the partnership property remaining after the payment or

satisfaction of the debts and liabilities of the partnership to the executor or general administrator within six months from the date of his appointment or such further time, if necessary, as the court may allow. Bal. Code, §§ 6188-6191. Now, the respondent did not make the slightest attempt to comply with the provisions of the statute relating to the administration and settlement of partnership estates. On the contrary, she treated the estate as the estate of her deceased brother from the time of filing her application for letters of administration to the filing of her final report, and there is no suggestion in the record that the estate she was administering upon was a partnership estate. If she was a partner of the deceased, she must have known it when she filed the petition for letters of administration, in which she stated that the property in question was owned by the decedent at the time of his death. As we have said, the title to the real estate stood in the name of the deceased upon the public records, and it was inventoried as part of his estate, and was sold by respondent, as administratrix, by order of court, and the proceeds accounted for in her final report and account. Under those circumstances she could not properly be permitted to claim an interest as a partner in the estate, even if it were conceded that the court had jurisdiction to determine such claim in this proceeding. And, moreover, the testimony given at the trial by the respondent, over the objection of appellants, as to the alleged partnership agreement between herself and her deceased brother, was incompetent and inadmissible under the statute and the decisions of this court, as it related to a transaction had between herself and the deceased. See Bal. Code, § 5991; *Smith v. Taylor,* 2 Wash. 422 (27 Pac. 812); *Gilmore v. The H. W. Baker Co.,* 12 Wash. 472 (41 Pac.

124). If the respondent advanced money to the decedent, as she claims she did, which was not repaid during his lifetime, she is a creditor of the deceased, and entitled, under the statute, to all the rights of such creditor.

Section 6200 of Ballinger's Code (2 Hill's Code, § 956), provides that:

"Every executor or administrator shall, after having qualified, by giving bond as hereinbefore provided, have a right to the immediate possession of all the real as well as personal estate of the deceased, and may receive the rents and profits of the real estate until the estate shall be settled or delivered over, by order of the court, to the heirs or devisees, and shall keep in tenantable repair all houses, buildings, and fixtures thereon, which are under his control."

This section prescribes the duties and designates the powers of executors and administrators as to real estate which may come into their possession as such officers. In the case at bar the respondent had a right, at the expense of the estate, to keep the hotel and saloon in tenantable repair, if necessary, during the administration; but she had no right, as administratrix, without proper authority, to erect an addition thereto, as she says she did, at an expense greater than the original value of the property, and charge the cost thereof to the estate. The question as to improvement of estates of decedents by administrators was involved, and was determined in accordance with the view above expressed, in *Huston v. Becker, supra*, wherein it is said in substance that the object of administration of the estate of a deceased person is not to incur indebtedness on its account or that of the heirs, but to provide for the payment of claims against the estate, and for the distribution of the assets after such claims are paid.

It is insisted, however, by appellants, that at the time the improvements were made the respondent was not in fact the administratrix, as she had been removed before that time, and had not then been reappointed; and the record seems to disclose that state of facts. Indeed, it appears that the learned trial judge himself considered her as but a *de facto* administratrix from the time of her removal until she was reappointed, 'and he seems to have allowed her claim for improvements for the reason that in making them she did what she believed to be for the best interests of the estate. As a tenant in common with the other heirs of the deceased, the respondent had no right to make extensive and costly improvements upon the property, and charge the expense thereof, or any portion of the same, to her co-tenants, in the absence of an agreement, express or implied, on the part of the latter to pay therefor. Boone, Real Property (2d ed.), § 362, and cases cited. But if the respondent made the improvements in question with the consent of her co-tenants, and the same were beneficial to the estate, it would seem that appellants ought not to complain of her action in that regard or refuse to pay their just proportion of the expense, even upon appellants' theory that, for the time being, she was merely a tenant in common, and not the administratrix, as she claimed to be, and as the court below considered her; for under such circumstances a promise would be implied to pay a due proportion of the costs of the improvements. And that such consent was given is shown by the uncontradicted testimony of the respondent. In view of the evidence before it, we do not think that the court below erred in allowing the claim for improvements, even if the respondent be considered as administratrix of the estate; for while, as we have said, she had no legal right,

by virtue of her appointment as such administratrix, to make the improvements, yet if she made them—as the testimony shows she did—in good faith, and with the knowledge and acquiescence of all persons entitled to an interest in the estate, we see no good reason why the amount thus expended should not be repaid to her out of the property of the estate so benefited. At all events, it appears that appellants have placed themselves in such a position that they cannot now object to the making of the improvements on the ground that such transaction was not within the power of the respondent, either as administratrix of the estate of the decedent or as tenant in common with the other heirs of the deceased. But, in our opinion, the court erred in refusing to compel the respondent to account for the value of the use of the premises occupied by her during her administration of the estate. It appears from the testimony that she conducted the hotel and saloon from the time of her brother's death, or of her appointment as administratrix in February, 1895, until some time in June, 1900, in her own name, and did not account to the court or otherwise either for the proceeds or profits of the business or for the rental value of the property, although she says in her testimony that she made money in the business, and bought two lots adjoining the hotel, and also a farm. It is very clear that she had no right thus to occupy and use the building belonging to the estate for a series of years for her own profit, and without accounting for the value of such use. Under the circumstances it was as much her duty to pay a reasonable rental for the property as it would have been her duty to collect and account for the rent if the building had been leased to a stranger to the estate. At the trial the respondent testified:

"I have not charged myself with any rent for said property. The rental value of said property when I first

took charge of it was not more than $10 per month. I consider that the money I expended in improving the property would offset the rent of the place."

The court, however, as we have seen, allowed her claim for the money expended for improvements, without any set off whatever for rent. Two other witnesses testified as to the rental value of the property. One of them stated that he was the owner of a one-story building in Hilliard, "just across the street" from the Lagerquist Hotel and saloon, which is a large, two-story building; that he was renting his building for $25 per month, and that the hotel was worth more than his building. The other testified that he owned considerable real estate in Hilliard and was doing a "rental business" in that town; that he had known the Lagerquist Hotel and saloon for the past five years; that he knew its rental value and that the rental value for the past five years would average $35 per month. According to the testimony, it is obvious that the respondent is justly indebted to the decedent's estate for use and occupation of the property thereof in a sum at least equal to the amount expended for improvements, and she should have been charged with the same in the settlement of her account.

Other alleged errors are discussed in the brief of counsel for appellants, which we are unable to consider for the reason that they relate to questions of fact as to which there is no evidence in the bill of exceptions.

. Our conclusion is that the learned trial court erred: First, in considering and determining the existence of a partnership between the respondent and the deceased; and, second, in not determining from the evidence adduced the value of the use of the property in controversy and charging the same against the respondent.

For the reasons above indicated, the order and judgment discharging the respondent from her trust and distributing the estate is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

REAVIS, C. J., and DUNBAR and MOUNT, JJ., concur.