
In the Matter of the Estate of DENNIS HOWARD, Deceased.

Surrogate's Court, Broome County, November 30, 1951.

*David A. Fowler* for Mary L. Howard, petitioner.

*Robert J. Madigan* and *Harry S. Travis* for Lena H. Garrison, as executrix of Dennis Howard, deceased, respondent.

PAGE, S.   On the 9th day of July, 1951, the executrix filed an inventory of personal property of the estate of said deceased. The petition in the present proceeding alleges that said deceased died possessed of a long list of property consisting of household furniture and furnishings and other personal property which should be but was not included in the inventory.

The present petition was implemented by an order to show cause why the respondent executrix should not be removed or punished in default of her returning a further inventory.

Counsel for petitioner rely on section 199 of the Surrogate's Court Act, which, insofar as it is applicable in the present instance, provides:

" § 199. *Return of inventory; how compelled.*

" The surrogate of his own motion or upon the petition of a creditor, coexecutor or coadministrator, or person interested in the estate showing that an executor or administrator has failed to return an inventory, or a sufficient inventory, within the time prescribed by law therefor, may make an order requiring the delinquent to return the inventory, or a further inventory,

or in default thereof, to show cause at a time and place therein specified, why he should not be removed or punished. On the return of the order, if the delinquent has not filed a sufficient inventory, the surrogate may revoke his letters, or issue a warrant of arrest against him, on which the proceedings are the same as on a warrant issued for disobedience to an order in proceedings supplementary to execution.'' In this connection counsel also cite section 99 of the Surrogate's Court Act which provides various grounds for the revocation of letters previously issued to various species of fiduciaries.

An answer on behalf of said executrix was filed herein. This denies that deceased died possessed of most of the personal property in question and alleges that the same is, with certain minor exceptions, the personal property of the respondent executrix. No testimony or other evidence in relation to the ownership of the property in question has been adduced herein.

Counsel for the respondent executrix have moved that the petition be dismissed on the ground that this court has no jurisdiction, or, if there be not a lack of jurisdiction, then that it would be contrary to a regular and orderly exercise of the judicial process, at the present stage in the administration of the estate of said deceased, to hear and determine the controverted question of ownership.

Article 11 of the Surrogate's Court Act deals with the appointment of appraisers and the filing of inventories. In the administration of estates generally, the provisions of this article are not '' too much lived up to,'' probably less so than as to any other article of the act. Sections 195, 196, 197 and 198, the first four in article 11 of the Surrogate's Court Act relate to the making and filing of inventories. One or more mandatory '' musts '' appears in each of these sections. Nevertheless, in the administration of a majority of estates, all of these, apparently mandatory, provisions are by-passed. No inventory is voluntarily made. None is compelled. In estates where there is some prospective controversy in relation to assets, an inventory is frequently deemed an advisable procedure. But, aside from such a situation, inventories are no longer very frequently filed, perhaps because the payment of appraisers' fees costs money.

Inventories generally are based on the assumption that most legal representatives are honest. It is not the function of appraisers, even preliminarily or tentatively, to hear and determine disputations as to what items of personal property may or may not be assets of the estate. They simply appraise such

personal property as the legal representative brings to their attention. The inventory is verified by the oath of the legal representative.

Thus it appears that the making and filing of an inventory is only the jumping-off place. Any battles to be fought in relation to estate assets come in later proceedings. If the legal representative believes that there is personal property held or claimed by an outside party which he ought to claim as an estate asset, then a discovery proceeding would be in order. Otherwise, in the majority of instances, this type of issue is resolved in an estate tax proceeding or, if not, reserved for hearing and determination in the proceeding for judicial settlement.

The executrix filed her inventory under her oath to the effect that it embraced all the personal assets of the estate. Later, in the verification of her answer to the present petition, she again took her oath to the same effect. In the absence of any showing (except that the widow is in the physical possession of the property in question) that such oaths were perjurious, it would be tyrannical and savoring of procedures quite alien to basic principles of the Anglo-Saxon system of jurisprudence to, by the process of subjecting the executrix to criminal or quasi-criminal penalties, unless she files a further inventory as demanded by the petitioner, coerce her to, in effect, confess that she previously had sworn falsely.

Reported cases in the category of the present proceeding are not very numerous. Some of these cited by respondent herein are: *Thomson* v. *Thomson* (1 Bradf. 24 [1849]); *Montgomery* v. *Dunning* (2 Bradf. 220 [1852]); *Matter of McIntyre* (4 Redf. 489 [1880]); *Greenhough* v. *Greenhough* (5 Redf. 191 [1881]), and *Matter of Goundry* (57 App. Div. 232 [1901]).

In general these authorities are pretty much in support of the foregoing line of reasoning. But it is urged that they were decided at times long before section 199 of the Surrogate's Court Act, or any of its antecedents, had been enacted in substantially the present form of this section. In deference to this contention, it is to be observed that it appears to be doubtful that section 199 of the Surrogate's Court Act wrought any substantial change in the law. Unlike the four sections immediately preceding it, its entire *modus operandi* hinges entirely on the permissive " may " preceding the provisions as to the possible punitive sanctions that may be taken against a legal representative determined to be delinquent in relation to an inventory of the estate assets.

The only case cited in petitioner's brief as affirmatively warranting the relief sought is *Matter of Burr* (116 App. Div. 518). This was a case in our own Third Department in 1906. The Surrogate of Broome County had determined that an executor be compelled to amend his inventory to include a promissory note alleged to have been owed by him to the estate. The executor had pleaded payment. The Appellate Division was of the opinion that the evidence before the Surrogate was inconclusive and directed a reference for the determination of the question of fact thus presented. The court did not express itself as to the particular question involved in the present proceeding, viz., the propriety of hearing and determining issues of title in a proceeding in relation to the making and filing of a proper inventory, nor was it intimated in any way that a Surrogate's Court would lack discretion not to do so.

It is true that the provisions of section 199 of the Surrogate's Court Act do appear to provide certain remedies to a person interested in a decedent's estate in relation to the filing of a complete and proper inventory. If we say the present issue should be reserved for judicial settlement, what, then, might or could be the purpose of such provisions? These provisions are readily applicable to and are provided for the solution of several conceivable situations which frequently arise but which fall short of amounting to a bona fide issue as to ownership. Among such instances would be cases in which, his attention having been called to certain omitted items, the legal representative concedes that they are assets of the estate. Another instance might be where, in making his inventory, the legal representative had arbitrarily refused to recognize the rights of a surviving spouse in relation to any or all of the exemptions provided by section 200 of the Surrogate's Court Act. Still another basis for the proper application of section 199 might be where the neglect or refusal to extend the inventory to cover all the assets was a readily demonstrable false or sham attitude, capriciously assumed by the legal representative.

But, in an instance such as is presently presented, where it is not apparent that the legal representative is acting otherwise than in good faith in relation to claiming ownership of the various disputed items, it would be tyrannical to employ the drastic compulsion of removal or finding in contempt or both against the legal representative, or, in effect, to coerce her confession that she had previously committed perjury.

In the proceeding for judicial settlement, objection may be taken to any account which omits the personal property in

question, thereby presenting any issue there may be in that regard in a manner more consistent with the well-developed practice of permitting litigants the free and uninhibited privilege of framing issues by means of pleadings conducive to an unprejudiced trial and determination of such issues.

On the condition that, as promised, the inventory is amended to include the conceded items, the motion for the dismissal of the petition herein is granted. Proceed accordingly.